## LIMA OIL & GAS CO. v. PRITCHARD.

No. 11728—Opinion Filed Sept. 18, 1923.

1. **Army and Navy—Soldiers' and Sailors' Civil Relief Act—Not Applicable to Oil and Gas Mining Lease.**

Since under the rule established in this state, an oil and gas mining lease conveys no estate in real or personal property, but merely grants a license to explore for oil and gas, section 301 of the act of Congress approved March 8, 1918 (sec. 3078¼f, U. S. Comp. Stat. 1918, Comp. Stat. 1919, Ann. Supp.),

known as the Soldiers' and Sailors' Civil Relief Act, has no application to such a contract for the purpose of tolling the time limited therein for the performance of a condition subsequent, and where such condition subsequent is wholly unperformed, and the contract by its express terms terminates as to both parties upon such failure to perform, no action to cancel same is necessary prior to the execution of a new lease by the lessor.

2. **Same—Acquirement of Record Title Subsequent to Act—Effect.**

In such case where the evidence shows that plaintiff took record title to an undivided one-half interest in the lease subsequent to the passage of the act of Congress for the obvious purpose of taking advantage of the provisions of the act to delay the right of the lessor to proceed under the terms of the lease, such acquisition of record title was ineffectual for that purpose under the provisions of section 3078¼qq of the same act.

3. **Specific Performance — Contracts — Optional as to One Party.**

When a contract is optional as to one party, so that a decree would be ineffectual in compelling performance by the optionee, this court will not render a judgment which in effect would be a decree for specific performance in behalf of the party not bound.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Nowata County; C. W. Mason, Judge.

Action by Charles S. Pritchard against Lima Oil & Gas Company, a corporation, to cancel a certain oil and gas lease. Decree for plaintiff, and defendant brings error. Reversed, with directions.

A statement of the case will be taken from the brief of defendant in error, as follows:

"On January 12, 1918, the defendant in error purchased an oil and gas mining lease from Phillip Strong, the owner of the lands covered by the lease, the consideration therefor being $1,000 in cash paid by defendant in error with an express condition contained in the lease to complete a well upon the land within nine months from the date thereof, and in the event of the failure of defendant in error to fulfill said condition, then the lease to become null and void as to both parties. On the date of the lease the defendant in error borrowed from Jacob Schneider the sum of $1,000 and paid it to the lessor, and to secure the said Jacob Schneider for said loan, executed an assignment of the lease, and the lease and the assignment were placed of record; thereafter, and on May 14, 1918, the defendant in error repaid Schneider $500 of said loan, and Schneider re-assigned an undivided half interest in the lease to defendant in error, retaining an undivided one-

half interest as security for the remaining $500 of the loan still unpaid, and said re-assignment was placed of record. That prior to the purchase of said lease by defendant in error, the plaintiff in error had acquired a lease from the same lessor upon the same lands, which lease had for failure on the part of the plaintiff in error to drill upon the lands become null and void, but was of record. That on June 4, 1918, the defendant in error, visited the offices of the plaintiff in error in Bartlesville, Okla., and there attempted to dispose of his lease, which as yet he had not developed or drilled upon, and on said visit he told the president of the plaintiff in error company that he was clearing up his affairs as best he could preparatory to entering into his military duties, and informed him that he was called and had to go into service, and offered to sell him the lease in question for what it had cost him; that no definite answer was given defendant in error by the president of said company at that time, but a few days later he called defendant in error by telephone and informed him that he had decided not to purchase the lease as offered. On this visit there was executed by the company a release of their former lease under which they had done no drilling, which was delivered to defendant in error. That between the time defendant in error purchased said lease and his departure to enter upon his military duties he went upon the lands and determined the location of the well he had agreed to drill, and made arrangements with a brother of the lessor living in the vicinity to prepare a pond for water which he expected to use in his drilling operations. That on June 26, 1918, he was inducted into military service, was in training camps in the United States for some weeks, and then transported to France, and was in active service until April 17, 1919, when he was discharged at Camp Pike, Arkansas, and returned to his home in Nowata. That upon his arrival home, he found upon inquiry as to what had become of his lease; that while he was in service the plaintiff in error had secured another lease upon the lands from the lessor by his attorney in fact; that oil had been discovered upon an adjoining tract in November, 1918, and that said lease of plaintiff in error was taken on February 19, 1919; that plaintiff in error had taken possession of the lands, and did in June, 1919, complete a well on the same."

It was the contention of plaintiff, Pritchard, in the trial court, and is here, that by virtue of the provisions of section 301 of the act of Congress approved March 8, 1918, known as the Soldiers' and Sailors' Civil Relief Act, the condition in the lease held by him to drill a well within nine months from date thereof was rendered inoperative by his induction into the military service of the United States, and that the subsequent lease of the Lima Oil & Gas Company is null and void by reason of the operation and effect of the above section upon plaintiff's lease.

The contention of the defendant in the lower court, and here, is that plaintiff's lease expired and terminated by its own terms upon failure of plaintiff to perform the condition subsequent named therein, and that section 301 of the act of Congress approved March 8, 1918, has no application in tolling the time limited in said contract for completing a well thereunder and that the subsequent lease taken by the defendant company upon said lands is a valid and subsisting lease.

The parties will be hereafter referred to as plaintiff and defendant as they appeared in the trial court.

Rowland & Talbott, for plaintiff in error.

Bert Van Leuven, for defendant in error.

Opinion by LOGSDON, C. All assignments of error in this case are comprehended under two propositions, which are thus stated in defendant's brief:

"1. The statute upon which plaintiff bases the validity and subsistence of his lease is inapplicable to the facts of this case.

"(2) The failure of the trial court to require Jacob Schneider, plaintiff's co-owner of the lease, and Phillip Strong, lessor of both plaintiff and defendant, to be brought in as parties to this suit, is error for which this court will reverse the judgment."

Under the first proposition both parties devote a major portion of their briefs to a discussion of the provisions and effect of the act of Congress of March 8, 1918 (U. S. Comp. Stat. 1918, Comp. Stat. Ann. Supp. 1919, section 3078¼a, et seq.), known as the Soldiers' and Sailors' Civil Relief Act. Their respective contentions are the converse of each other under the proposition first above stated. A determination of these contentions involves a careful consideration and analysis of the provisions of the act involved

The 1st section of the act defines its general purpose and scope of operation to be to enable the government to more successfully prosecute the war by extending protection to those in the military service against prejudice or injury to their civil rights by temporarily suspending legal proceedings and transactions which may prejudice those rights. The 2nd section defines certain words and phrases, while the 3rd extends the act to embrace all territory subject to the jurisdiction of the United States and all proceedings commenced in any court therein.

It is thus seen that the general purpose of this legislation was the protection of the civil

rights of soldiers in the interest of united effort, and its scope of operation embraced all court proceedings in all courts subject to the jurisdiction of the United States. That it was not intended to apply to extrajudicial proceedings based on contractual relations nor to impair the obligation of contracts has been held by the courts of Alabama, Massachusetts, and Minnesota. Wood v. Vogel (Ala.) 87 South. 174; Morse v. Stober (Mass.) 123 N. E. 780; Bell v. Buffington (Mass.) 137 N. E. 287; Taylor v. McGregor State Bank (Minn.) 174 N. W. 893; Nelson Real Estate Agency v. Seeman (Minn.) 180 N. W. 227.

The 4th section extends the benefits of stay, postponement or suspension of proceedings to sureties, guarantors and indorsers in the discretion of the court. By the 5th section it is provided how default judgments may be taken, a penalty for false affidavits in connection therewith, for appointment of attorney to represent the absentee, and for vacating default judgments. By the 6th, 7th, 8th and 9th sections provisions are made for staying actions, for suspending penalties and executions, and prescribing the duration of such stays and suspensions, while the 10th section tolls statutes of limitation. The 11th section prevents eviction or distress for default in payment of rent in certain classes of cases, and authorizes allotment of pay to dependents of soldiers and sailors.

The 12th section of the act (sec. 3078¼f, Comp. Stat. 1918, Comp. Stat. Ann. Supp. 1919), and on which plaintiff relies, provides:

"(1) No person who has received, or whose assignor has received, under a contract for the purchase of real or personal property, or of lease or bailment with a view to purchase of such property, a deposit or installment of the purchase price from a person or from the assignor of a person, who after the date of payment of such deposit or installment, has entered military service, shall exercise any right or option under such contract to rescind or terminate the contract or resume possession of the property for nonpayment of any installment falling due during the period of such military service, except by action in a court of competent jurisdiction.

"(1a) Any person who shall knowingly resume possession of property which is the subject of this section otherwise than as provided in subsection (1) hereof shall be guilty of a misdemeanor and shall be punished by imprisonment not to exceed one year or by fine not to exceed $1,000, or both.

"(2) Upon the hearing of such action the court may order the repayment of prior installments or deposits or any part thereof, as a condition of terminating the contract

and resuming possession of the property, or may, in its discretion, on its on motion, and shall, on application to it by such person in military service or some person on his behalf order a stay of proceedings as provided in this act unless, in the opinion of the court, the ability of the defendant to comply with the terms of the contract is not materially affected by reason of such service; or it may make such other disposition of the case as may be equitable to conserve the interest of all parties."

Was plaintiff's oil and gas lease within the provisions of this section? To determine this question it is necessary to ascertain the legal effect of the oil and gas lease held by plaintiff, and for this purpose it is immaterial whether plaintiff was the sole owner of the lease or the owner of an undivided one-half interest therein. Was this lease a "contract for the purchase of real or personal property"? Was it a "lease or bailment with a view to purchase of such property?" Was the bonus paid by plaintiff "a deposit or installment of the purchase price" of real or personal property? To one only superficially conversant with the manner and method of dealing with oil and gas leases either supposition is unwarranted, but what is the legal effect of such a transaction as that here involved?

The lease in question contained no surrender clause nor any delay clause. It was neither an "or" lease nor an "unless" lease. Its duration was expressly limited by this language:

"Lessee agrees to complete a well on the above described premises within nine months from the date hereof, and on failure to complete a well on the above described premises, then this lease shall become null and void as to both parties."

This language confers no option of any kind on either party to the contract after expiration of nine months. The lease simply ceased to operate as a contract, and neither party retained any rights thereunder, after failure of this condition subsequent. No reentry was necessary, because the lessor never parted with his possession. In 8 R. C. L., p. 1100, section 158, a condition subsequent is thus identified:

"A condition differs from a covenant. The legal responsibility of nonfulfillment of a covenant is that the party violating it must respond in damages. The consequence of the nonfulfillment of a condition is a forefeiture of the estate. Where the language is plain and clear, whether the clause creates a condition subsequent or a mere personal covenant is a matter of pure legal interpretation for the court. And if the intention of the parties is so clearly expressed as to show

that the enjoyment of the estate created by the deed was intended to depend on the performance of a certain stipulation, a condition, and not a covenant, will be declared."

The above provision of the lease was a plain and clear expression of a condition subsequent. What was the estate which was made to depend upon this condition subsequent? Was it an estate in real property? Was it personalty? Was the contract one of purchase or of bailment on the installment plan? The decisions of this court, beginning with Kolachny v. Galbreath, 26 Okla. 772, 110 Pac. 902, emphatically answer, "No." In the above case the pioneer expression on this question was made by this court:

"The lease relied upon by plaintiff does not vest in him the title to the oil and gas in said land, and.is not a grant of any estate therein, but is simply a grant of a right to prospect for oil and gas, no title vesting until such substances are reduced to possession by extracting same from the earth—an incorporeal hereditament."

In Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okla., sp. cit. 724, 119 Pac. 719:

"The lease does not have the effect of placing the title of the oil and gas that is under the surface of the land in controversy in the lessee, but to grant to the lessee the privilege of exploiting for the oil and gas."

In Mitchell v. Probst, 52 Okla., sp. cit. 15, 152 Pac. 599:

"The plaintiff in error had only a license to explore the land for gas and oil for the time mentioned in the lease."

To the same effect see: Warner v. Page, 59 Okla. 259, 159 Pac. 264; Kelly v. Harris et al., 62 Okla. 236, 162 Pac. 219; Garfield Oil Co. v. Champlin, 78 Okla. 91, 189 Pac. 514; Brennan v. Hunter, 68 Okla. 112, 172 Pac. 49; Curtis v. Harris, 76 Okla. 226, 184 Pac. 574.

In Thornton on Oil and Gas (2nd Ed.) section 148, it is said:

"Forfeitures, however, on the part of the lessee in a gas or oil lease, which arise by reason of his neglect to develop or operate the leased premises, are rather favored by the law, because of the peculiar character of the product 'to be provided."

Evidently the lessee in this case, by changing the standard form of oil and gas leases was protecting himself against personal liability for failure to drill, and having done so he cannot now complain of the result of his own astuteness. It is settled in this state beyond cavil that oil and gas leases are to be construed strongly against the lessee and in favor of the lessor. Superior Oil & Gas Co. v. Mehlin, 25 Okla. 809, 108 Pac. 545; Frank

Oil Co. v. Belleview Gas & Oil Co., 29 Okla. 719, 119 Pac. 260; New State Oil & Gas Co. v. Dunn, 75 Okla. 141, 182 Pac. 514.

It seems clear that this lease simply gave plaintiff an option to explore for oil and gas for a period of nine months, if no well was completed within that time—a license to enter upon the premises for that purpose only—and is not within the provisions of the twelfth section of the Soldiers' and Sailors' Civil Relief Act, quoted above. Since no re-entry was necessary under the terms of the lease, no action in court in that behalf was necessary, and therefore no situation ever arose making applicable subdivision 2 of section 3078¼f, supra.

There is also another provision of the act to be considered in connection with the testimony of plaintiff on the trial. Plaintiff testified substantially that at the time of the execution of the lease in January, 1918, he had been registered and was subject to call for military service under the Selective Service Act. He took the lease in his own name, Jacob Schneider paid the bonus by his personal check and plaintiff executed an unconditional assignment of the lease on the back thereof to Schneider. No note was executed evidencing an indebtedness. No time for maturity of the loan was ever fixed. Plaintiff tried to sell the lease, but failed. Schneider was a farmer and knew nothing of the oil game. He didn't know how to handle the lease as a commercial proposition, and knew nothing about drilling and exploring for oil. Plaintiff's call to service came, and May 14, 1918, he took an assignment from Schneider to an undivided one-half interest in the lease for a stated consideration of $500. No further payment on the debt to Schneider was ever made up to February 3, 1920, when the case was tried. Under this condition of the record it seems that section 3078¼qq. U. S. Comp. Stat. Ann. Supp. 1919 (being the 32nd section of the Soldiers' and Sailors' Civil Relief Act), is applicable. That section reads:

"Where in any proceeding to enforce a civil right in any court it is made to appear to the satisfaction of the court that any interest, property or contract has, since the date of the approval of this act, been transferred or acquired with intent to delay the just enforcement of such right by taking advantage of this act, the court shall enter such judgment or make such order as might lawfully be entered or made, the provisions of this act to the contrary notwithstanding."

Without considering the effect of this transaction between plaintiff and Schneider, as to whether it constituted an assignment or an equitable mortgage as between them, there

can be no reasonable doubt under plaintiff's testimony that the reassignment of an undivided one-half interest to him by Schneider was for the purpose of tolling the nine months drilling clause in the lease, and delaying the lessor in the exercise of his right to lease to another, and under the provisions of the last-quoted section such reassignment was ineffectual for that purpose. This conclusion renders applicable the rule early announced by this court in the case of Kolachny v. Galbreath, supra, and consistently adhered to ever since, which declares that specific performance of a contract will not be enforced in favor of one whose obligation under the contract is optional. Justice Williams in that case said:

"The contract is sought to be enforced negatively by a cancellation of the oil and gas lease held by Galbreath and others, and an injunction restraining them from developing this land for oil and gas, and to permit plaintiff to operate under his lease. This amounts to a specific performance in equity."

The reason why such an action is not maintainable is thus stated at page 778:

"It is not essential to determine in this case as to whether such an option (a surrender clause) would be valid at law; it being obvious that under authorities heretofore cited, which seem to be supported by reason, that equity will not decree that one party specifically perform a contract which the other party at its option may refuse to carry out. After the relief by decree should be granted to such party, he then under the cancellation clause of the lease would have it in his power to nullify the decree by exercising his right thereunder not to proceed further. A court of equity will not do a vain and useless thing by rendering a decree settling the rights of the parties which one of them may at will set aside."

In the case at bar a decree canceling defendant's lease would in effect be a decree for specific performance of plaintiff's lease by the lessor without in any way binding plaintiff to drill. He might peddle the lease, since defendant has produced oil on the land, but he could exercise his option and refuse to drill, thus again terminating the contract at the expiration of the time extended by the court without effecting its object—development. This might result in irreparable injury to the lessor, because at the date of defendant's lease, February 19, 1919, there were producing wells upon an adjoining tract, and at the date of commencement of this action defendant had one producing well on the land in controversy.

It is therefore concluded that the judgment and decree of the trial court canceling defendant's lease and ordering an accounting, and in effect decreeing specific performance in favor of plaintiff, is erroneous in law and not sustained by the evidence. This renders it unnecessary to consider the other proposition presented.

The judgment of the trial court should be reversed, with directions to vacate the same and to dismiss the action for want of equity.

By the Court: It is so ordered.