JONMIL, INC., Plaintiff and Appellant,

v.

James McMERTY, Defendant, Third-Party Plaintiff and Appellee,

v.

Harris BAILEY, Third-Party Defendant and Fourth-Party Plaintiff,

v.

Thomas HOLTGREWE and Scott Nelson, Fourth-Party Defendants and Appellees.

Civ. No. 9410.

Supreme Court of North Dakota.

April 20, 1978.

Johnson, Milloy, Johnson, Stokes & Robinson, Wahpeton, for appellant; argued by Arthur Warren Stokes, Wahpeton.

Stefanson, Landberg, Alm & Pitsenbarger, Moorhead, Minn., for appellee; argued by Renee J. Homuth, Fargo.

SAND, Justice.

This is an appeal from a Richland County district court summary judgment dismissing the complaint of plaintiff, Jonmil, Inc., for specific performance of a contract for deed (more specifically, asking for the sum of $60,000.00, the purchase price, with 8% interest, less payments already made).

Jonmil, Inc., also asked this court to review the trial court's order denying its motion for summary judgment against James McMerty, defendant and third-party plaintiff; Harris Bailey, third-party defendant and fourth-party plaintiff; and Thomas Holtgrewe and Scott Nelson, fourth-party defendants. However, because we affirm the trial court's summary judgment dismissing the complaint of Jonmil, Inc., we find it unnecessary to consider this additional question.

On 22 July 1976, the plaintiff, Jonmil, Inc., as seller, executed a contract for deed of certain real property located in Wahpeton, North Dakota, with defendant, James McMerty, as buyer.

The contract for deed contained many of the usual provisions. It stated the description of the property, the total purchase price of $60,000.00 with 8% interest to be paid in monthly installments of $573.42 until the principal and interest were fully paid, and provided that the purchaser was to have possession. It also contained a default provision which is set out more fully later in this opinion.

McMerty, by letter dated 24 February 1977, informed Jonmil, Inc., that "we [McMerty and associates] find it impossible to keep up the building payments" and "have discussed this matter with [name omitted] and he informs us that our liability is limited to the equity in the building." McMerty also advised that [name omitted], a potential buyer, "was willing to pay the full price for the building." McMerty further advised that under the circumstances the building would be vacated immediately.

No March 1977 payment was made. Jonmil, Inc., on 30 March 1977, wrote McMerty that it was ready, willing and able to perform the contract. Jonmil, Inc., also demanded performance from McMerty, declared him in default, and demanded payment in accordance with the [default] provision of the contract for the entire indebtedness owing, which was now the sum of $59,121.26.

The contract for deed contains the following default provision:

"9. *Default.* It is mutually understood and agreed that in case of the failure on the part of the Buyer to do or perform any and all of the covenants and agreements herein agreed to be performed such failure shall entitle Seller, at his option, to declare the entire indebtedness owing hereunder immediately due and payable and to cancel this Contract for Deed in accordance with the laws of the State of North Dakota. In the event of the cancellation of this Contract for Deed, all payments theretofore made hereunder by the Buyer or his assignees, shall be kept and retained by said Seller or his assignees, for the use of said premises by said Buyer and assignees as and for his liquidated and agreed damages by reason of the cancellation of this Contract for Deed."

The basic issue on appeal is whether or not the trial court erred by denying Jonmil, Inc., as seller, the remedy of specific performance of a contract for deed.

Chapter 32–04 of the North Dakota Century Code outlines the basic requirements for the equitable remedy of specific performance.

Section 32–04–08, NDCC, provides as follows:

"Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compelled specifically to perform, everything to which the former is entitled under the same obligation, either completely or nearly so, together with full compensation for any want of entire performance."

■ At first blush this statute suggests that there must be complete, full mutuality on both parties before the remedy of specific performance is applicable. However, on further analysis, and particularly upon review of the case law, as found in *Alfson v. Anderson*, 78 N.W.2d 693 (N.D. 1956), and its predecessors, it appears to us the statute merely requires that both parties must have an obligation and a remedy. The obligation may be either in the form of damages or specific performance. It is not necessary that both parties to a contract are entitled to the identical remedy of specific performance before one party is entitled to the remedy of specific performance. *Knudtson v. Robinson*, 18 N.D. 12, 118 N.W. 1051 (1908), and *Pederson v. Dibble*, 12 N.D. 592, 98 N.W. 411 (1904).

Another pertinent provision on specific performance is § 32–04–09, NDCC, which provides as follows:

"It is to be presumed that the breach of an agreement to transfer real property cannot be relieved adequately by pecuniary compensation and that the breach of an agreement to transfer personal property can be thus relieved." [1]

This provision supports a buyer's right to specific performance on the ground that monetary damages are presumed to be inadequate but it does not support an action by seller for specific performance.

In *Zimmerman v. Campbell*, 245 N.W.2d 469, 471 (N.D.1976), this court noted that specific performance is neither a matter of grace nor of absolute right but is an equitable remedy, and as such rests in the sound discretion of the court. See also, *Sand v.*

*Red River National Bank & Trust Co.*, 224 N.W.2d 375 (N.D.1974).

Courts generally demand that the party seeking specific performance as a remedy for breach of contract has the burden of proving or establishing the right and need for such relief. *Rohrich v. Kaplan*, 248 N.W.2d 801, 807 (N.D.1977). This proof must include a showing of good faith on the part of the plaintiff (see *Rohrich, supra*) and a showing that the legal remedy of damages is inadequate, or that an award of damages will fail to put the injured party in as good a position as if the other party had fully performed. *Tower City Grain Co. v. Richman*, 232 N.W.2d 61 (N.D.1975).

Historically, courts have frequently awarded the remedy of specific performance to an aggrieved purchaser of real estate because of its unique character and because the remedy at law for monetary damages would be inadequate compensation for the sellers' breach of contract. *Tower City Grain Co. v. Richman, supra.*

Jonmil, Inc., relied heavily upon the following statement in *Alfson v. Anderson*, 78 N.W.2d 693, 702 (N.D.1956):

"A contract for the sale of real estate ordinarily imports mutuality. The vendor may be compelled by specific performance to convey according to the terms and conditions provided in the contract. On the other hand, the vendor may compel the vendee to perform specifically even though his performance consists only in payment of the purchase price. *Beddow v. Flage*, 22 N.D. 53, 132 N.W. 637 . . . ."

The foregoing statement in *Alfson* gave *Beddow* as its authority. However, in *Beddow* the court merely held that a vendee may seek a decree of specific performance for the conveyance of land and at the same time seek and recover damages for failure to convey in accordance with the written contract. *Beddow* did not state or hold that a vendor was entitled to specific perform-

---

1. This section was derived from California, which has since amended its provision by deleting the words "and that the breach of an agreement to transfer personal property can be thus relieved."

ance involving land contracts. *Beddow* stated that the contract in question was bilateral and as such it satisfied the mutuality provision of what is now § 32–04–08, NDCC. This leaves the distinct impression that a vendor is not always entitled to specific performance as a matter of right or law.

We also note the court in *Alfson* used the expression "specifically enforceable liability." Furthermore, the court, in its discussion, stated that mutuality may be either in the form of an obligation or remedy, in which case a court may specifically enforce "execution of the lease by the lessor and payment by the lessee or either." The expression "specifically enforce" the execution of the lease obviously means by way of damages, in one instance, or by specific performance, as the case may be. In any event, the statement in *Alfson* relying upon *Beddow* for the authority that the vendor is entitled to specific performance is not well founded.

However, in this case we are not required to decide and do not conclude that specific performance at any time or under any conditions will not be available to the vendor to compel performance of the specific basic provisions of the contract as distinguished from the default provisions relating to acceleration or liquidated damages, etc.

Specific performance is an equitable remedy and the right to such remedy [2] must be determined upon equitable principles.

The proposition whether or not specific performance of a contract for deed is available to the seller is not without its problems and difficulties in North Dakota. As an illustration, let us assume the seller on a contract for deed seeks specific performance from the purchaser and the court grants it, but the purchaser is unable to pay the money. The seller, in the absence of a separate note, would have no recourse other than the cancellation of the contract for deed. If the seller were to seek a money judgment, §§ 32–19–06 and 32–19–07, NDCC, prohibiting deficiency judgments, would have to be considered.[3]

■ After a careful examination of Jonmil, Inc.'s prayer for relief in its complaint, we have concluded that technically Jonmil, Inc., did not request specific performance of the basic contract, but rather sought relief under part of the default provisions set out earlier herein. Jonmil, Inc.'s prayer for relief demands:

> "That the defendant perform said agreement and pay to your plaintiff the sum of Sixty Thousand Dollars ($60,-000.00), together with interest thereon at the rate of eight percent (8%) per annum from September 1, 1976, less payments already made."

■ It is apparent that Jonmil, Inc., is relying upon and is asking the court to enforce the contractual remedy set out in the default provision in paragraph 9 of the contract for deed. In doing this, Jonmil, Inc., has either improperly selected only a part of the default provision or has erroneously concluded that this provision allows it to declare the entire purchase price for the land, less payments already made, due as damages for the breach of the contract. However, we interpret the contractual remedy, in paragraph 9, to provide that whenever the buyer defaults, the seller, at his option, may declare the entire indebtedness owing, cancel the contract for deed, and keep the payments already made by the buyer as full liquidated and agreed-upon damages. The default provisions in paragraph 9 are conjunctive and not disjunctive. The language of paragraph 9 does not permit the seller to select only a part thereof and disregard the remainder.

2. Because specific performance is a remedy founded in equity, the trial court in all probability would not disregard, and neither should this court, the fact that McMerty advised Jonmil, Inc., by letter 24 February 1977, and again 31 March 1977, that a purchaser for the real property in question at the same price was available.

3. *McKee' v. Kinev*, 160 N.W.2d 97 (N.D.1968), at page 101, stated that §§ 32–19–06 and 32–19–07, NDCC, encompass land contracts as well as real estate mortgages. An excellent discussion of the history and purposes of these sections is set out in *First State Bank of Cooperstown v. Ihringer*, 217 N.W.2d 857 (N.D. 1974).

The damages which Jonmil, Inc., seeks are solely monetary. In *Larson v. Larson*, 129 N.W.2d 566 (N.D.1964), we stated that the purpose of specific performance is to compel the parties to an agreement to perform what they have contracted to do. Jonmil, Inc., did not ask that the basic provisions of the contract be specifically performed, such as payment of the monthly installments of $573.42 beginning 1 October 1976 through 1 September 1991, the payment of taxes, assessments, and insurance, etc. In short, Jonmil, Inc., did not seek specific performance of the basic contract for deed in its prayer for relief.

■ Jonmil, Inc., in its letter dated 30 March 1977, declared McMerty in default and elected to invoke the default remedy set out in paragraph 9 of the contract for deed. The complaint incorporated and relied upon the letter for its cause of action. Having elected to proceed under the default provision, even though denominated specific performance and argued as such, Jonmil, Inc., is bound by its election. See *Raasch v. Goulet*, 47 N.D. 674, 223 N.W. 808, 818 (1929). Jonmil, Inc., cannot cancel the contract and at the same time sue for its specific performance.

The trial court under the liberal pleading doctrine could have treated the complaint as an action for damages, but because Jonmil, Inc., treated and argued the action as one for specific performance, it did not. We nevertheless agree with the trial court's action and accordingly hold that it did not abuse its discretion in its denial of the summary judgment for specific performance. *Rohrich, supra*, at 808. We further observe that had the trial court treated the complaint as an action for money damages, §§ 32–19–06 and 32–19–07, NDCC, prohibiting deficiency judgments, most likely would have had to be taken into account if the damages sought, as indicated in the prayer for relief, exceeded the amount of liquidated damages specified in the default provision.

The summary judgment denying Jonmil, Inc.'s request for specific performance is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.