## HITCHCOCK *v.* PAGE.

WHERE a lease gives the lessee the privilege of purchasing the land at the expiration of the lease, on certain terms, the privilege is limited to the whole land, and the lessee, or a purchaser from him of a portion of the land, cannot claim the right to buy that portion.

APPEAL from the Twelfth District.

The demurrer was on the ground of want of facts to constitute a cause of action; that the relief prayed for is inconsistent and multifarious.

*Hoge & Wilson,* for Appellant.

No brief on file.

*Campbell & Pratt,* for Respondent.

It is contended that the covenant of Larkin to sell is not divisible; and that plaintiff could not have enforced as against Larkin, this covenant, as to this part of the land. This principle is not questioned, but its application to the facts, as between these parties, is:

Had Larkin sold and conveyed the whole land, at the end of

the term, in exact accordance with the covenant to Williams, this question of divisibility could not have arisen.

Had Larkin not conveyed any part to Williams, it would have been for Larkin alone to have raised this question, on this application of plaintiff to him, to purchase this part.

But Larkin does, in fact, waive this question; and before the end of the term, does convey a part to Williams including the "locus."

How, then, can Williams, (or defendant who staid in his place,) say that he will take advantage of his own act in purchasing part from Larkin, when Larkin, (the only party entitled to refuse,) has waived that objection. Williams (and defendant) have prevented Larkin from selling to plaintiff, had he been so minded; and if the intent to convey this interest existed, the instrument "E" expresses that intent; it does not rest with defendant to say that Larkin's covenant was not divisible; as between plaintiff and defendant there is nothing to divide. Plaintiff claims as against defendant all that defendant conveyed or tried to convey.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

The plaintiff, Respondent here, filed his bill to assert a trust in respect to a certain piece of land in San Francisco. It is not very easy to make an intelligible statement of the facts without a map to indicate the precise subject of dispute. The defendant filed a demurrer to the bill, which was overruled, and the defendant declining to answer further, a final decree was rendered for the plaintiff.

The bill sets forth that, on the 6th of September, 1852, one Thomas O. Larkin, then owner of a large tract, leased part of it—a piece marked "A" on the map—to one Williams for five years, with a clause allowing Williams to purchase at the end of the term. On the 1st January, 1853, Larkin leased to Williams, also for five years, the adjoining land, with a like covenant. On the 31st January, 1853, Williams conveys to Van Voorhies *two-fifths of a part* of the land contained in such lease; and, on the same day, conveyed to one Baum one-fifth of the same piece. On the 21st December, 1853, Williams, Van Voorhies, and Baum,

29

unite in conveying to plaintiff *a part of the land included in Larkin's lease of the 1st January,* 1853, *which part* is that sued for in this action. On the 23d October, 1854, before the expiration of either lease, Larkin, for valuable considerations, in accordance with the intent, meaning, and understanding, of his said two leases in that behalf, and of the parties thereto, conveyed the reversion of a part of the land covered by each lease, and embracing the *locus,* to Williams; and Williams, on the 7th of June, 1855, conveys the same land to defendant, Page. On the 8th June, 1854, plaintiff leases to Williams, for five years, from July 1st, 1855, the *locus,* together with other land of plaintiff, adjoining. On the 7th of June, 1855, Williams assigns the lease to the defendant, and defendant paid rent to plaintiff. May 24th, 1858, and after Larkin's lease of the 1st January, 1853, had expired, defendant took the deed from Williams, with full knowledge of all these deeds and interests. On the 1st January, 1858, plaintiff gave notice to the defendant of his wish and readiness to purchase the lot. The notice was given in pursuance and in order to secure the benefit of a provision in the lease from Larkin to Williams, being the first paper noticed in this statement. That provision is as follows: "And the said lessor hereby agrees that the said lessee may have the privilege of purchasing said premises at the expiration of said five years at a price to be fixed by arbitration, in case the parties cannot agree, in the following manner: Each party shall choose one disinterested person as an appraiser, and these two shall appraise the said lot; and in the event of a difference of opinion between them as to the value of the same, then they shall call in a third disinterested person, and a decision of a majority of the three shall be final; or the said lessor shall buy said brick building, the price to be fixed in the same manner as the value of the ground."

The Respondent claims, that under this state of facts, Page, when he bought the reversion from Williams of this piece of ground, bought it subject to the pre-emption right in Larkin's deed to Williams. We have already seen what that right was. It is not necessary to consider whether this pre-emption right is a personal privilege to the lessee, or whether it runs with the lease and may be assigned with it, for the view we have taken is decisive of the question, independently of this consideration.

The right, as we have seen, was the right to purchase the entire lot upon the agreed terms. The whole provision looks to such a purchase, and is not susceptible of a different interpretation. This provision cannot amount to more than an executory agreement of purchase of a tract of land in the usual form. Such an agreement does not give a privilege of taking a small portion of the property. The vendee must take, or offer to take it all; he cannot take such part as he chooses and reject the rest. Such a construction of a privilege like this, would operate very harshly and prejudicially to the interests of the lessor.

It is enough, however, that the privilege, existing by the agreement, must be conformable to it; and that the agreement is, as we have stated, for *all* at the option of the lessee, and upon the agreed terms. The conveyances by Williams to Van Voorhees of two-fifths, and to Baum of one-fifth, of this leased property, probably put it out of his power to avail himself of this privilege; and when, afterward, Williams, Van Voorhies, and Baum, conveyed to the plaintiff *a part* only of this leasehold interest, such assignment did not convey to the plaintiff the right to buy that part; for, as we have seen, the right was not divisible in this way. Otherwise, this provision might give rise to a very great number of purchases, and the price of each piece might be very difficult, if not impossible, of apportionment. When Larkin conveyed the reversion to Williams, in October, 1854, of a part of the land covered by the two leases, Williams did not purchase such part as trustee, nor was Larkin bound to convey to him, under the circumstances, any such part. He chose, however, to do so. By the various conveyances and contracts, this pre-emption right had ceased to exist; at least, it could not be enforced, because no one had any right to enforce the contract—if it were such—except according to its terms and true intent and meaning. What would have been the effect if these various interests had come to the same hands, or been attempted to be enforced by all of these assignees together, and all agreeing to enforce this contract, it is unnecessary to determine, for no such fact, or state of facts, exists. As the transaction stood, the parties had effectually cut themselves off from this benefit; or, to speak more properly, no one of them had ever entitled himself to this privilege, because no one had become the assignee of the

whole lease, of which this pre-emptive clause was a part. Williams, holding still an interest, made this purchase, and the rest were not willing, or at least made no effort or offer to do so. We think he had a right to buy it. There was no one entitled to purchase, because no one held the assignment of this right; nor did any one else offer to purchase. When Williams sold to Page, therefore, Page took the same right. We cannot see that if Larkin conceded to him a right to purchase, even though under the impression that he was entitled to it upon the facts, that this can convert him into a trustee for the others, or for any one of the others, who had no right as assignees, to buy in preference to Williams.

Nor is there anything in the other circumstances which establishes this trust. The mere recital in the deed of Larkin, that he made it in pursuance of the lease, is not enough to raise a trust; for it matters not how Williams bought it if these other parties had no rights under the lease. Nor does the fact that Page was tenant under Hitchcock prevent him from buying in the reversion.

The case of *Laffan* v. *Naglee* is much relied on. The facts are wholly different from those here.

Judgment reversed, and cause remanded.