NORTHWESTERN BELL TELEPHONE COMPANY, an Iowa Corporation, Plaintiff and Appellee,

v.

Richard E. COWGER, Zaundra M. Cowger, and Western States Life Insurance Company, a corporation, Defendants and Appellants.

Civ. No. 9884.

Supreme Court of North Dakota.

March 25, 1981.

Mack, Moosbrugger, Ohlsen, Dvorak & Senger, Grand Forks, for defendants and appellants; argued by Richard A. Ohlsen, Grand Forks.

Shaft, McConn, Fisher & Thune, Grand Forks, for plaintiff and appellee; argued by John G. Shaft, Grand Forks.

PAULSON, Justice.

Richard E. Cowger and Zaundra M. Cowger appeal from a judgment entered against them by the District Court of Grand Forks County on August 1, 1980. The district court determined that Northwestern Bell Telephone Company, an Iowa corporation, was entitled to specific performance of an option to purchase property contained in a lease agreement entered into between the Cowgers and Northwestern Bell on June 30, 1971. We affirm.

On June 30, 1971, the Cowgers executed a lease to Northwestern Bell of Lot Two of the Service Subdivision in Grand Forks, Grand Forks County, North Dakota. Northwestern Bell had previously conveyed the property to the Cowgers. On July 15, 1971, the Cowgers entered into an agreement with Western States Life Insurance Company for an assignment to Western States Life of income received under the lease. The purpose of this arrangement was to allow the Cowgers, who did business as Rico Construction Company, to construct a building for Northwestern Bell and to obtain title to the property in order to secure a construction loan from Western States Life.

The pertinent parts of the June 30, 1971, lease agreement are as follows:

"1. TERM OF LEASE. The term of this lease shall commence on the date the building hereinafter described is completed, made available to the LESSEE for use and occupancy, and accepted in writing by the LESSEE and shall continue thereafter for a period of ten (10) years.

"If the commencement date of this lease is other than the first day of a calendar month, this lease shall continue in full force and effect for a period of ten (10) years from the first day of the calendar month next succeeding the date of commencement

"The LESSEE is hereby granted the option to extend the term of this lease for one additional 5-year period from and after the expiration date of said original term, which option may be exercised by the LESSEE by giving the LESSOR written notice of its intention to do so at least sixty (60) days prior to the expiration date of the original term. . . .

"2. RENTAL. For the use of the lease premised [sic], and for and in consideration of the LESSOR'S faithful performance of all of the obligations imposed upon the LESSOR hereunder, the LESSEE agrees to pay to the LESSOR during the term hereof, rentals to be determined as follows:

"Upon completion and acceptance of the building by the LESSEE and certification of the net cost of said building, land, and improvements by the LESSOR to the LESSEE, the rentals will be finally established and agreed upon at 16.8% per annum of such costs for the first ten (10) years and at 13.1% per annum for renewal term.

"No change, change order, or addendum to plans and specifications affecting the LESSOR'S bid cost of One Hundred Eighty Thousand and no/100's ($180,-000.00) Dollars for the land, land improvements, buildings, or building components will be binding upon the LESSEE and LESSOR unless and until such changes, change orders, or addendum have been approved in writing by autho-rized representatives of the LESSEE and LESSOR.

.    .    .    .    .

"12. OPTION TO PURCHASE.

"A. LESSOR hereby grants to LESSEE the exclusive right to purchase the demised premises together with all structures, improvements, and equipment thereon owned by the LESSOR during the term of this lease.

"b. If LESSEE elects to purchase the premises under the terms of this option, the LESSEE will give the LESSOR sixty (60) days prior notice in writing of its intention to purchase. Upon receipt of LESSEE'S notice of election to exercise the option granted, the LESSOR shall immediately deliver to the LESSEE a complete abstract of title satisfactory to LESSEE. Upon receipt of the abstract, the LESSEE shall have a reasonable time in which to examine title and upon completion of such examination, if title is found satisfactory, and upon tender of the purchase price to the LESSOR, LESSOR shall promptly deliver to LESSEE a good and sufficient warranty deed conveying a marketable title to the premises to LESSEE. All rentals and taxes shall be prorated between Grantor and Grantee to the date of delivery of the aforesaid deed. In the event said title is found to be defective, then LESSOR shall be deemed to be in default and the rights of the parties shall be as specified in Paragraph 9.

"c. The purchase option price will be computed at the certified original cost of land and improvements less depreciation on the building and depreciable improvements computed on a thirty (30) year straight line basis with no allowance for salvage."

The Cowgers executed a mortgage in the amount of $170,000 to Western States Life on January 25, 1973. On that same date the Cowgers also executed an assignment of rental income to Western States Life in order to complete the financial arrangements required in the mortgage. The acceptance of the assignment was executed

by Northwestern Bell on January 21, 1976. On September 30, 1974, Northwestern Bell sent the following letter to Mr. Cowger:

"Under terms of the lease dated January 1, 1972, for the Grand Forks construction storeroom, we wish to notify you of our desire to purchase the property. Please have a warranty deed prepared effective January 1, 1975.

"Our records indicate the following:

| Location | Original Land Purchase | Original Building Cost | Depreciation Period | Depreciation | Proposed Purchase Price |
|---|---|---|---|---|---|
| Grand Forks Construction Storeroom | $7,225.20 | $165,775.00 | 12–13–71 to 1– 1–75 | $16,577.50 | $156,422.70 |

"If these figures meet with your approval, please forward the Abstract of Title and proceed with the sale."

Under the terms of the option to purchase contained in the lease, the purchase price for the property would consist of the original cost of the land and improvements minus depreciation on the building and other depreciable improvements. The depreciation was computed by the straight line depreciation method with a thirty-year term. No allowance for salvage value was to be used in arriving at the purchase price. In the negotiations over the purchase price, a dispute developed between the Cowgers and Northwestern Bell, and the Cowgers did not furnish an abstract of title to the property. Northwestern Bell had first occupied the building constructed by the Cowger construction company, Rico Construction Company, on December 13, 1971.

The Cowgers did not agree with the proposed purchase price figure which Northwestern Bell had used in arriving at a purchase price for the property. For this reason, the Cowgers notified Northwestern Bell that the option to purchase had not been exercised and that the purchase of the property could not be completed. Because the Cowgers failed to furnish an abstract of title and failed to complete the purchase agreement, Northwestern Bell initiated this action on July 19, 1977. In its complaint, Northwestern Bell requested that the court direct the Cowgers to specifically perform the option to purchase contained in the lease; and also requested damages totaling $10,000 due to repairs to the building which were necessitated by improper construction of the building. In their answer, the Cowgers denied that Northwestern Bell had exercised the option to purchase and demanded a trial by jury. A pretrial conference was held on January 18, 1979, and on March 9, 1979, the district court ordered that the issue as to the exercise or failure to exercise the option to purchase would not be determined by a jury. Western States Life was not dismissed as a party in the action but was excused from participation in the trial.

The trial was held on February 6, 1980. At the beginning of the trial, the Cowgers again objected to the district court's decision to determine the issue of whether or not the option to purchase had been exercised and the Cowgers requested a jury trial on the issue. The court reaffirmed its earlier decision. Northwestern Bell's claim for damages was abandoned prior to the trial. During the course of the trial, Northwestern Bell agreed to compute the purchase price for the property according to the computations supplied by the Cowgers. The court determined that Northwestern Bell had exercised the option to purchase but that a disagreement had developed over the purchase price. Because Northwestern Bell had agreed to use the Cowgers' computations in arriving at the purchase price, the district court concluded that Northwestern Bell was entitled to specific performance of the option to purchase, but was required to pay to the Cowgers the sum of $146,627.93 adjusted from February 1, 1980, to the time of delivery of a warranty deed to the property.

Two issues are presented for our consideration:

(1) Whether or not the court committed error by failing to submit the issue of the exercise or failure to exercise the option to purchase to a jury.

(2) Whether or not the court committed error in determining that the option to purchase had been exercised by Northwestern Bell.

## I

The Cowgers contend that they were entitled to a trial by jury on the issue of whether or not the option had been exercised and rely upon the Seventh Amendment to the United States Constitution and upon Article I, § 13 of the North Dakota Constitution in support of their contention. Both the Seventh Amendment to the United States Constitution and Article I, § 13 of the North Dakota Constitution secure the right to a jury trial in civil cases. Northwestern Bell requested the remedy of specific performance in its complaint. Although a claim for relief for damages totaling $10,000 was contained in the complaint, the claim was abandoned. Historically, specific performance has been an equitable remedy and no jury trial is available on such claims. *Alfson v. Anderson*, 78 N.W.2d 693 (N.D.1956). Despite the fact that law and equity are now merged, the distinction between cases which are equitable in nature and those which were triable in the common-law courts is still viable in determining whether or not one is entitled to a jury trial. *Landers v. Goetz*, 264 N.W.2d 459 (N.D.1978). The Cowgers did not submit a counterclaim against Northwestern Bell; thus, the only relief demanded in the action was equitable in nature and the Cowgers were not entitled to a jury trial because all of the issues tried in the case were equitable. This result is obtained even though the Cowgers contend that the exercise or nonexercise of the option to purchase is a question of fact. Factual questions which arise in an action regarded as equitable in nature generally are determined by the court.[1]

## II

The second issue is concerned with whether or not the option to purchase had been exercised by Northwestern Bell. Paragraph 12 of the lease provides that the lessee (Northwestern Bell) had the exclusive right to purchase the property during the term of the lease, which extended for a period of ten years from the date the building was completed. Northwestern Bell first occupied the building on December 13, 1971, but the actual date on which the lease began was on January 1, 1972, because the lease provided that if the commencement date did not occur on the first day of a calendar month the first day of the succeeding calendar month would be the commencement date of the lease term. It is undisputed that Northwestern Bell exercised its option to purchase in the time period specified in the lease and that Northwestern Bell had the exclusive right to purchase the property. The dispute centers upon whether or not Northwestern Bell complied with the terms of the lease regarding the exercise of the option to purchase.

One method by which an offer is rendered irrevocable is by the acceptance of consideration by the offeror in exchange for his promise to keep the offer open. This type of offer is commonly referred to as an option contract. *Holien v. Trydahl*, 134 N.W.2d 851 (N.D.1965). Options must be accepted unequivocally and in accordance with the terms of the option. *Haugland v. Hoyt*, 267 N.W.2d 803 (N.D.1978); *Greenberg v. Stewart*, 236 N.W.2d 862 (N.D.1975). Under the provisions of paragraph 12 of the lease, Northwestern Bell was required to give sixty days' notice of its intention to purchase the property and Northwestern Bell did send letters to this effect to the Cowgers as early as September 30, 1974.

---

1. For a further discussion of the nature of specific performance, see Dobbs, Handbook on Law of Remedies § 12.2 (2d Rep.1976). The judicial remedy of specific performance is governed by Chapter 32–04, N.D.C.C.

Upon receipt of the notice of election to exercise the option, the Cowgers were to deliver a satisfactory abstract of title to Northwestern Bell. Upon receipt of the abstract and the subsequent examination of title, Northwestern Bell was to deliver the purchase price to the Cowgers and would in turn receive a warranty deed to the property.

The Cowgers' claim that Northwestern Bell has not complied with the terms of the option is without merit because the Cowgers, by failing to furnish an abstract of title, have not complied with the terms of their irrevocable offer. Northwestern Bell could not be expected to tender the purchase price of the property until they had determined that title to the property was marketable. Despite the Cowgers' failure to supply an abstract of title, Northwestern Bell did tender the purchase price to the Cowgers. The dispute developed over the purchase price of the property and the computations used to arrive at the purchase price. Because no established figure had been set as the purchase price for the property, the variations which occurred due to the computations necessitated by paragraph 12(c) of the lease cannot be construed as a rejection by Northwestern Bell of the option to purchase. Where the exercise of the option to purchase does not provide for payment of the purchase price coincident with the optionee's exercise of the option, the payment of the purchase price is merely an incident of performance of the bilateral contract created by the exercise of the option. See Annot., 71 A.L.R.3d 1201 (1976).

In *Horgan v. Russell*, 24 N.D. 490, 140 N.W. 99 (1913), the North Dakota Supreme Court established that acceptance of an option which results in a contract of purchase and the performance of the contract itself are distinct. Likewise, in the instant case, the payment of the purchase price for the property was not a condition precedent to the exercise of the option and was an incident of performance of the contract to purchase, as distinct from its formation. The Cowgers were not entitled to reject Northwestern Bell's option to purchase because Northwestern Bell had the exclusive right to purchase the property and they exercised this right as early as September 30, 1974. The Cowgers also failed to comply with the terms of the option because no abstract of title was delivered to Northwestern Bell. Therefore, the district court properly entered judgment in favor of Northwestern Bell.

For reasons stated in this opinion, the judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.