**Doug WESSELS and Jay Wessels, Plaintiffs and Appellants,**

v.

**Yvonne WHETSTONE, as the personal representative of the Estate of Alex Generous, Defendant and Appellee.**

**Civ. No. 10412.**

Supreme Court of North Dakota.

Oct. 3, 1983.

* Justice WM. L. PAULSON served as Surrogate Justice for this case pursuant to Section 27–17–03, N.D.C.C.

R. Scott Stewart [argued] and William S. Heigaard, Langdon, for plaintiffs and appellants.

Lawrence D. DuBois [argued], of Fleming & DuBois, Cavalier, for defendant and appellee.

PAULSON, Surrogate Justice.*

This is an appeal from a summary judgment denying specific performance of an alleged contract to convey land. We affirm.

On March 1, 1976, Alex Generous [Generous], granted to the plaintiffs, Jay and Doug Wessels [Wessels], a one-year option to purchase certain real property. The option was renewable each year thereafter by the tender by Wessels of $100 to Generous on or before March 1 of each succeeding year. The option was renewed every year thereafter until Generous's death in July of 1980. The defendant, Yvonne Whetstone [Whetstone], was appointed personal representative of the Alex Generous estate. In that capacity, Whetstone learned of the existence of a document denominated "Option to Buy Land" which was filed for record in the office of the register of deeds of Pembina County. She then caused to be filed in that office an affidavit "to give notice the estate of Alexander Generous does not recognize any obligation to be bound or to comply with the terms of [the] Option". This affidavit was filed for record on November 21, 1980.

On December 5, 1980, Attorney Paul T. Crary wrote a letter to counsel for the personal representative on behalf of Doug Wessels, wherein Wessels offered to purchase the property subject to the option, in addition to another parcel of land, for a total sum of $225,000. Crary subsequently received a reply from Whetstone in a letter dated December 31, 1980, which stated that "the land in the Generous Estate is not for sale". On February 18, 1981, Doug Wessels wrote a letter to Whetstone which, in relevant part, states as follows:

"Pursuant to that certain Option dated March 1, 1976, a photo-copy of which is enclosed, I do hereby choose to exercise the said Option and to purchase the land described therein.

"I also make an offer to buy the South Half of the Southwest Quarter of Section 15, Township 163, Range 56—80 acres of wooded land, which although not contained in the Option is adjacent to the land that is contained in the Option.

"I make to you at this time an offer of $235,000 total for both parcels which, based upon a professional appraisal which was conducted recently, I believe it does represent a fair market value of the land...."

On February 28, 1981, the option expired. Wessels later received from Whetstone's attorney a refusal of his proposal in a letter dated March 9, 1981. The stated reason for the refusal was that "the amount stated is inadequate ... [and] because ... [Whetstone] does not recognize [that] you hold any option rights to any of the land held in the Generous Estate". Wessels then brought suit for specific performance.

Whetstone subsequently brought a motion for summary judgment, alleging improper exercise of the option. Following a hearing on the motion, the district court issued a memorandum opinion in which it concluded that no genuine issue of material fact existed and that the option was never

---

* Justice WM. L. PAULSON served as a Surrogate Justice for this case pursuant to Section

27–17–03, N.D.C.C.

properly exercised by the Wesselses. From that judgment Doug Wessels appealed.[1]

The relevant portion of the March 1, 1976, option at issue states as follows:

"3. Parties of the Second part [Wessels] may exercise this option at any time within the option period by entering into a Contract for Deed with party of the first part, his heirs, executors or assigns—said contract to specify a down payment of not less than five per cent (5%) of the total purchase price, and, a contract period of up to twenty-Five years subject to the desire of parties of second part.

"4. Should both parties agree, the option may be exercised by the tendering of the total purchase price by parties of the second part at the time of purchase.

"5. Upon exercise of the option the purchase price shall be the fair market value at the time the option is exercised."

The parties amended the option on March 21, 1977. The amendment states, in relevant part, as follows:

### "AMENDMENT

"For the purpose of determing [sic] value in the event that parties of the second part desire to exercise this option, three non interested appraisers shall be selected to appraise the land and to tender to the interested parties a fair market value thereof. The appraisers shall be selected by Paul T. Crary, attorney at law, or, in his absence, another attorney agreed upon by the parties. Parties of second part may then exercise this option by tendering to party of first part the purchase price as determined by the appraisers, either by way of a contract for deed or by full purchase price as per the terms of this option. . . ."

The issue presented on appeal is whether or not the Wesselses performed all acts possible or necessary to exercise the right of acceptance granted to the Wesselses by Alex Generous under the March 1, 1976, agreement.

### I.

An option agreement is a contract by which the owner of property gives another the right to buy the property at a fixed price within a specified time on agreed terms. *Mason v. Haakenson,* 303 N.W.2d 557, 558 (N.D.1981); *Holien v. Trydahl,* 134 N.W.2d 851 (N.D.1965). By such an agreement the owner does not sell the property, nor does he at that time contract to sell. He does, however, sell to the other party the right, at his election or option, to demand the conveyance in the manner specified. *Gleeson v. Frahm,* 211 Neb. 677, 678, 320 N.W.2d 95, 96 (1982); *Commuter Developments & Investments, Inc. v. Gramlich,* 203 Neb. 569, 573, 279 N.W.2d 394, 396 (1979). To obtain an enforceable right to the property, the optionee must exercise the option within the time and upon the terms and conditions provided in the option agreement. *Mason, supra* 303 N.W.2d at 558; *Haugland v. Hoyt,* 267 N.W.2d 803 (N.D. 1978). The offer contained in the option must be accepted unequivocally and in accordance with the terms of the option. *Northwestern Bell Telephone Company v. Cowger,* 303 N.W.2d 791, 794 (N.D.1981); *Haugland, supra* 267 N.W.2d at 806; *Greenberg v. Stewart,* 236 N.W.2d 862 (N.D.1975).

Under the provisions of the March 21, 1977, amendment to the option, the Wesselses could exercise the option by tendering to Generous or his estate the fair market value of the land subject to the option. This tender was to be in the form of a contract for deed, or, if both parties agreed, the total purchase price. The fair market value was to be determined by three appraisers to be appointed by an attorney. Three appraisers were, in fact, appointed by the attorney and they did view the land. Their appraisals ranged from a

---

1. Jay Wessels died prior to this appeal. The option, however, provides that it may be exercised by either or both of the Wesselses. This appeal is therefore being prosecuted by Doug Wessels only.

low of $600 per tillable acre to a high of $1,000 per tillable acre. The appraisers acted independently and at no time did they arrive at a jointly determined appraisal. The district court viewed this failure and the failure of the Wesselses to produce either a contract for deed and 5% downpayment or the full purchase price as a failure of the Wesselses to exercise the option. While we believe that reasonable persons might differ as to the necessity that the appraisers arrive at a mutually agreed price, we do, nevertheless, agree that the actions of Doug Wessels were not sufficient to exercise the option and create a binding contract for the sale of real estate.

In 1 Williston on Contracts, 3d Ed., § 61D, page 205, it is said that "options, like other offers, call for acceptance by a promise or an act, depending on whether the main contract is to be bilateral or unilateral". The option at issue calls for acceptance by "tender" of a contract for deed. The letter of December 5, 1980, was not a tender. It was merely an offer to purchase land. Doug Wessels admits as much. They contend, however, that the letter of February 18, 1981, was a proper exercise of the option. We disagree. The letter merely states that Doug Wessels "choose[s] to exercise" the option. It is not a tender of a contract for deed. The letter offers no price for the land subject to the option; no interest rate; no term of years; in short, it is merely a notice of intent to exercise. No contract for the sale of land was formed by mere notice when the option clearly called for acceptance by "tender".

 Doug Wessels further argues, however, that Whetstone's repudiation of the option waived the necessity of his tender. He points to Whetstone's affidavit filed for record in the office of the register of deeds. It is true that our law does not require a party to a contract to perform vain and futile acts when there has been a refusal in advance to comply with the terms of the agreement. *Fargo Public Library v. City of Fargo Urban Renewal Agency,* 185 N.W.2d 500 (N.D.1971). The "contract" with which Whetstone refused to comply,

however, was the option. As we noted earlier, an option to purchase is not an executory contract for the sale of property. The duty which Whetstone repudiated could not come into existence until the option was properly exercised by the Wesselses. In effect, what Doug Wessels asserts is that Whetstone's repudiation of the option gave rise to a fully executory contract, regardless of proper acceptance on his part. The contention has no basis in either law or logic. Whetstone incurred no obligation until the offer contained in the option was properly accepted by the Wesselses. They failed to do so and, consequently, Whetstone cannot be ordered to specifically perform a contractual duty which does not exist.

The judgment of the district court is affirmed.

ERICKSTAD, C.J., and PEDERSON, J., concur.

SAND, Justice, concurring specially.

I concur in the result and with a major portion of the opinion. I agree that Wessels technically did not comply with the option. The noncompliance, however, is more the result of the option itself in not specifying how the detailed requirements of when and how certain essential matters should be performed.

As an example, the option failed to specify the procedure to be used in determining the "fair market value." The option provides for the selection of three disinterested persons, but nothing is said with reference to who will have the responsibility of asking the attorney to appoint the appraisers, also were the appraisers to meet and act jointly or were the appraisers to reach one price, or, if a disagreement existed among the appraisers, was the average to be used in determining the price; or was some other method to be employed for this purpose. The option is not clear on this.

In short, Wessels could not satisfy the option agreement because the option agreement was inadequate in some essential matters. How could Wessels tender a contract for deed or make a down payment or offer

full payment without knowing the "fair market value"? Under this setup, no matter what offer Wessels would make it could be rejected and each subsequent offer could be rejected, ad infinitum.

I, therefore, agree that the option agreement was not complied with, but I also conclude it could not be complied with. The option agreement was materially defective to the extent that it was legally defective and inadequate. As a result Wessels should be entitled to have the option payments returned with interest.

VANDE WALLE, Justice, dissenting.

Wessels perhaps did not strictly comply with the terms of the option in his attempted exercise thereof, or perhaps the reason for that noncompliance was, as Justice Sand has indicated in his concurring opinion, the terms of the option itself. However, I believe Whetstone's attempted repudiation of the option agreement and her obvious resistance to recognizing its validity in any manner is primarily responsible for the events that subsequently transpired. Ordinarily we attempt to construe a contract in a manner which will make it valid, legal, effective, and enforceable. Whetstone attempted to do the opposite and I believe her actions constitute an anticipatory breach which made Wessels's strict compliance with the terms thereof unnecessary. Wessels's mistake was in attempting to satisfy Whetstone when, in fact, she refused to recognize Wessels's rights under the option agreement. I do not believe he should be punished nor Whetstone rewarded for that mistake.