Gerald D. FRIES, Janice H. Bishop, Joanne C. Jesse, and Douglas Norbert Fries, Plaintiffs and Appellees,

v.

Mary S. FRIES, Defendant and Appellant.

Civ. No. 900400.

Supreme Court of North Dakota.

June 3, 1991.

Freed, Dynes, Reichert & Buresh, P.C., Dickinson, for plaintiffs and appellees; argued by George T. Dynes.

Chapman & Chapman, Bismarck, for defendant and appellant; argued by Daniel J. Chapman.

ERICKSTAD, Chief Justice.

Mary S. Fries appealed from a summary judgment granting Gerald D. Fries, Janice H. Bishop, Joanne C. Jesse, and Douglas Norbert Fries (herein, the Plaintiffs) specific performance of an option contract. We reverse and remand for entry of a judgment dismissing the Plaintiffs' action.

Mary and Jake Fries were married in 1945 and together had seven children during their marriage. The family lived on a 400 acre farm near Mott until 1968 when Mary "left the farm home the morning after she was beaten by Jake...." *Fries v. Fries*, 288 N.W.2d 77, 79 (N.D.1980).

Jake and Mary were ultimately divorced. As part of the property division Jake received 240 acres of their farmland and Mary received the remaining 160 acres of farmland subject to a requirement that she cash rent the property to Jake for ten years. The divorce decree also provided that Jake was to have an option to buy Mary's 160 acres at $233 per acre, and that, if Jake exercised the option, the cash rent payments would be credited toward the purchase price.

Pursuant to the divorce decree, a "LEASE FOR OPTION TO BUY" was executed by Jake and Mary on May 21, 1982, which contained a provision stating that Jake had an option to purchase the property, until the lease terminated on December 31, 1988.

Jake learned in early 1987 that he had cancer, and during that summer he conveyed his 240 acres of farmland by quit claim deed to the seven children. Jake also assigned to the seven children his option to purchase Mary's 160 acres. Jake died later that year.

Six of the seven children[1] thereafter attempted to partially exercise the option on Mary's quarter section:

> "The undersigneds [sic], ... do herewith exercise the option to purchase from you a six-sevenths (6/7) interest in the ... property."

The written exercise of option also stated that "[t]he purchase price to be paid shall be the amount stipulated ..." in the lease and in Jake and Mary's divorce judgment. Both the lease and the divorce judgment provided that the purchase price would be $233 per acre for the property.

The children offered to pay Mary, in a letter dated December 6, 1988, "$9,668.58 for the 6/7ths interest." That amount was obviously derived by utilizing the $233 per acre price stipulated in the lease and divorce decree and then computing the cost of purchasing a 6/7ths interest in the total 160 acres, as follows:

| | | |
|---|---|---|
| 160 acres × $233 per acre | = | $37,280 |
| less cash rent paid: | | |
| 5 years at $15/acre = 12,000 | | |
| 5 years at $17.50/acre = 14,000 | | |
| | | 26,000 |
| Total purchase price | | $11,280 |

A 6/7th part of the total purchase price is $9,668.58 which is exactly what the children offered to pay in partially exercising the option. The December 6, 1988, letter also stated "if our figures are incorrect, we certainly are willing to recompute that." This statement in no way changes the fact that the offer was for a 6/7ths interest in the property. The statement is not an offer to purchase the entire property, but is only an expression of the optionees' desire to correctly compute the amount owing for their purchase of a 6/7ths interest in the property.

Mary refused to convey the land, and four of the children then commenced this lawsuit against her requesting the trial court to specifically enforce the option contract. Two of the children changed their minds about exercising the option and refused to join in this action as party Plaintiffs. The parties filed cross motions for summary judgment. The trial court granted the Plaintiffs' motion, entering a judgment requiring Mary to convey four-sevenths of the quarter section to the Plaintiffs.

On appeal, Mary asserts that, assuming Jake's option was assignable and was properly assigned, the attempt to purchase only part of the property (a six-sevenths interest in the quarter section) was an improper and ineffective exercise of the purchase option. We agree.

In order to obtain an enforceable right to the property, an optionee must exercise an option within the time and upon the terms and conditions provided in the option agreement. *Wessels v. Whetstone*, 338 N.W.2d 830 (N.D.1983). The offer contained in an option agreement must be accepted unequivocally and in accordance

---

1. This case does not involve the issue in *Bartz v. Heringer*, 322 N.W.2d 243 (N.D.1982), wherein we concluded that a co-optionee has a fiduciary duty not to frustrate the stated purpose of an option by refusing to cooperate with a fellow co-optionee.

with the terms of the option. *Northwestern Bell Telephone Co. v. Cowger*, 303 N.W.2d 791 (N.D.1981). The acceptance must be unconditional and without modification or imposition of new terms. *Alfson v. Anderson*, 78 N.W.2d 693 (N.D.1956). Regarding the exercise of an option agreement 1 Williston On Contracts, § 62, p. 206 (1957) states:

"When the optionee decides to exercise his option he must act unconditionally and precisely according to the terms of the option. When the acceptance is so made the optionor becomes bound. Nothing less will suffice unless the optionor waives one or more of the terms of the option.

\* \* \* \* \* \*

"The general attitude of the courts is to construe the attempt to accept the terms offered under the option strictly."

Because the optionee is free to exercise or not exercise the option, but the optionor is bound to perform if the option is properly exercised, courts strictly hold an optionee to "exact compliance" with the terms of the option. *Hayward Lumber & Investment Co. v. Constr. Products Corp.*, 117 Cal. App.2d 221, 229–30, 255 P.2d 473, 478 (1953). "An option is a mere offer, and acceptance thereof must be made within the time allowed, and in minute compliance with its terms, or the optionee's rights thereunder will be lost, substantial compliance being insufficient to constitute an acceptance." *Gurunian v. Grossman*, 331 Mich. 412, 417, 49 N.W.2d 354, 357 (1951).

■ An option contract is not divisible unless the option agreement expressly provides otherwise. *See Kastner v. Dalton Development, Inc.*, 265 Minn. 511, 122 N.W.2d 183, fn. 5 (1963). An attempt to purchase only a part of the property covered by an option is an ineffective exercise of the option. This rule is stated in James, *Law of Option Contracts*, § 822, p. 330:

"In the absence of a provision in the option contract authorizing an election to purchase part of the property covered by the option, the optionee is not entitled to elect to purchase less than the whole, which is another way of saying that the election, by the optionee, must conform with the terms of the option."

■ This general rule of option contract law was applied in *Hitchcock v. Page*, 14 Cal. 440 (1859), a case with factual similarities to this case. In *Hitchcock, supra,* the owner of a large tract of land leased it to another for five years with an option to purchase the property at the end of the lease term. The lessee then assigned a part of the leasehold interest to another who attempted to exercise the option to purchase only a portion of the leased property. The California Supreme Court held that the attempted exercise of the option was ineffective, stating:

"The right, as we have seen, was the right to purchase the entire lot upon the agreed terms.... Such an agreement does not give a privilege of taking a small portion of the property. The vendee must take, or offer to take it all; he cannot take such part as he chooses and reject the rest." *Hitchcock, supra,* 14 Cal. at 443.

The Plaintiffs have advanced no reason why the general rule, that an optionee is not entitled to purchase less than the entire property covered by the option agreement, should not apply in this case. Neither have they cited any case in which a partial exercise of an option has been upheld in the absence of express language in the option providing for a partial exercise. The rule prevents the forced splitting or the forced joint ownership of property where those results were neither contemplated nor bargained for under the option agreement executed between the original parties.

The Plaintiffs attempted to only partially exercise the option by purchasing a six-sevenths interest in Mary's farmland. However, the purchase option under Jake and Mary's lease agreement was for the entire quarter section, and there was no language in the option making the subject property divisible or permitting a partial exercise of the option. Accordingly, we conclude that the attempt by the Plaintiffs to purchase a portion of Mary's quarter section was an ineffective exercise of the option.

■ Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *E.g., Schloesser v. Larson*, 458 N.W.2d 257 (N.D.1990). Because the right to exercise the purchase option expired in December 1988, we reverse the judgment and remand for entry of a judgment dismissing the Plaintiffs' action on the merits.

GIERKE and LEVINE, JJ., concur.

MESCHKE, Justice, concurring and dissenting.

I respectfully dissent from the remand for entry of summary judgment dismissing altogether the plaintiffs' claim for enforcement of their option. I would remand for trial.

The written "Lease With Option To Buy" said:

### IV.

During the period of this lease and up to and including the 31st day of December, 1988, LESSEE shall have the option to purchase this said property for the sum of $233.00 per acre, the LESSEE to be given credit upon said purchase price for all money paid under this lease.

### V.

BUYER will have a reasonable time after the exercise of this option to complete the transaction and SELLER will furnish an abstract of title to said property, continued to date by a certified abstracter, and shall afford a reasonable time to BUYER within which to examine the title to said property and SELLER will have a reasonable time within which to correct any defects in the title that may be discovered by said examination.

### VI.

Upon completion of this sales transaction, the SELLER shall convey this said property to the BUYER by a good and sufficient Warranty Deed, giving a fee simple title in and to this said described property free of all liens and encumbrances of any nature whatsoever.

Before he died, Jake quitclaimed the leased quarter-section on April 30, 1987 to his seven children, specifically transferring the option to them:

(The rights hereby conveyed include the existing lease with Mary S. Fries and the option to buy said property as contained in such lease).

After the children farmed that quarter-section, as well as Jake's other land, during the 1987 and 1988 farming seasons, six of the children retained a lawyer to exercise the option.

According to the uncontradicted affidavit of plaintiffs' attorney in support of their motion for summary judgment, the plaintiffs' lawyer gave the following "Exercise Of Option To Purchase Real Estate" to Mary on December 7, 1988:

The undersigneds, as attorneys for Douglas N. Fries, Carol E. Dixon, Gerald D. Fries, Thomas N. Fries, Janice Bishop, and Joanne Jesse, do herewith exercise the option to purchase from you a six-sevenths (6/7) interest in the following described real property:

[description omitted]

This exercise of option is taken pursuant to that written document entitled "Lease With Option to Buy", dated February 1, 1979, between Mary S. Fries and Jake M. Fries.

As provided in said Lease With Option to Buy, we request that you furnish an up-to-date abstract of title to said property and that the same be sent to the undersigneds as attorneys for the individuals named above. As soon as the abstract is examined and the title approved, the full purchase price will be paid to you. *The purchase price to be paid shall be the amount stipulated in said Lease With Option to Buy*, as well as in the divorce judgment issued in the action entitled Mary S. Fries, Plaintiff, vs. Jacob M. Fries, Defendant.

(My emphasis). This notice of "Exercise of Option" was hand delivered to Mary along with a letter, dated December 6, 1988, that said:

As soon as the title is approved, following our examination of the abstract of title, *you will be entitled to the full remaining cash payment.* As we compute that, the amount owing to you, after giving credit for the 10 years of lease payments, would be $9,668.58 for the 6/7ths interest. However, if our figures are incorrect, we certainly are willing to recompute that.

(My emphasis). Mary did not respond.

The children's attorney repeatedly wrote to Mary and to her attorney thereafter, without response. A letter on January 4, 1989 said:

The next step would be for your client to furnish us an abstract of title and, assuming that there are no title problems, *we will then* be in position to *make payment of the full purchase price as provided in the lease with option dated February 1, 1979.*

(My emphasis, again). Letters on January 23, February 8, and March 15 brought no reply until May 12, 1989, when an attorney representing Mary replied:

I have now finally heard from Mary Fries and she is ready to go to Court if this is what the children want.

Four of the children sued for specific performance, alleging that they "stand ready to pay the full amount of the purchase price as provided in [The Lease With Option To Buy], less appropriate credits for rentals, but [Mary] has refused to cooperate and has indicated an unwillingness to furnish an abstract of title, to furnish the requisite warranty deed, or to any other manner cooperate in the completion of said sale."

After cross-motions for summary judgment, largely premised on the undisputed facts in the affidavit by plaintiffs' attorney, the trial court reasoned that the lease-option was "a single non-divisible instrument" and "subject to transfer," that the four plaintiffs "may exercise their option to purchase to the full extent of their interest therein," and that Mary's challenge to the adequacy of her children's "offer of performance is without merit" because Mary "refused the Plaintiffs' offer of perform-

ance and excused the Plaintiffs from establishing their capacity to make payment in full of the amount necessary to complete the purchase." The trial court concluded that the option was "a valid transferrable interest in real property" and that the plaintiffs had "validly exercised said option...." The trial court entered summary judgment specifically enforcing the option in favor of the plaintiffs for their undivided interests.

On appeal, Mary argues that the option was not assignable; that it was not validly assigned, including because Jake was not competent to transfer the option to his children; and that the option was not validly exercised because all the children had not joined in exercising the option, and because tender of the purchase price was inadequate.

An option is assignable like other contractual rights. Restatement (Second) of *Contracts* § 320 (1981); 6 Am.Jur.2d *Assignments* § 20 (1963). Virtually every real property interest is transferable. NDCC 47–09–02. *See also Willow City Farmers Elevator v. Vogel, Vogel, Brantner & Kelly,* 268 N.W.2d 762, 764 (N.D. 1978) ("[U]nder the 'modern rule,' the assignability of things in action is the rule and nonassignability the exception"). I see no legal reason why this option was not assignable.

While Mary argues that a quitclaim deed cannot be a valid assignment, she submits no supporting authority. Therefore, I see no legal reason why the quitclaim deed was not an effective assignment from Jake to the children.

Mary also questions Jake's mental competence to transfer property to his children, although it is doubtful that she has standing to do so. The trial court finessed this argument by ruling that Jake's children held the option as his legal heirs through an earlier, January 4, 1986 will. I agree with that ruling.

Mary argues, however, that a question remains about whether it is Jake's personal representative or his children that hold the power to exercise the option, depending on

whether the option is real or personal property. That doesn't matter anymore. In *Feickert v. Frounfelter*, 468 N.W.2d 131 (N.D.1991), we ruled that Probate Code provisions make clear that title to both real and personal property passes to the heirs at death, and that, so long as the personal representative has not directly exercised power of administration over an inherited asset, a decedent's heirs may directly deal with and enforce an inherited claim. Jake's children held the option rights.

The trial court ruled that less than all of the assignees could validly exercise the option, citing *Bartz v. Heringer*, 322 N.W.2d 243 (N.D.1982). Generally, a cotenant can deal with others insofar as his separate and undivided interest is concerned. 20 Am. Jur.2d *Cotenancy and Joint Ownership* § 94 (1965). We have held that the failure of one cotenant to join in exercising an option cannot frustrate its effective exercise by another cotenant. *Bartz v. Heringer*. I agree with Justice VandeWalle that we should seek to construe a contract in a manner which will make it valid, legal, effective, and enforceable. *Wessels v. Whetstone*, 338 N.W.2d 830, 834 (N.D.1983) (VandeWalle, Justice, dissenting). If an optionor is paid in full, that optionor cannot fairly object that less than all of the optioned property is to be conveyed. Therefore, I would affirm the trial court's conclusion that this option was validly exercised.

This brings us to the question of whether the optionees made an adequate tender of the purchase price. The majority opinion focuses on a single sentence in a letter accompanying the notice of exercise of the option and, by making its own calculations, finds as a fact that the full price was not tendered. That may be a possible inference from the facts, but I do not believe it is the only one, or even the likeliest one. Since the "Exercise Of Option" states that "the full purchase price will be paid to you," I cannot agree that a deficient tender is the only permissible inference. "[F]ull purchase price" would ordinarily mean the full balance due to exercise the option. On this appeal, plaintiffs have argued that, "if splitting the property between them and Mary is objectionable to her, as she con-

tends in her brief, they stand ready and willing to purchase the entire quarter section and pay Mary the entire purchase price...." Therefore, I believe that tender is a factual question to be properly resolved by the trial court.

Furthermore, as plaintiffs have argued on this appeal, there are issues about whether any greater tender was required. *Amann v. Frederick*, 257 N.W.2d 436, 440 (N.D.1977) ("The evidence indicates that the [optionors] flatly refused to convey, and did not mention a failure to tender the money as a reason for the refusal. Under the circumstances, it would have been futile to proffer the money, and our law does not require that a buyer perform a futile act when the seller has refused to perform") (citations omitted). *See also Alfson v. Anderson*, 78 N.W.2d 693, 703 (N.D. 1956) ("He cannot prevent performance and then use lack of performance ... as a bar to specific performance"); NDCC 9–12–17 ("The thing to be delivered, if any, need not in any case actually be produced upon an offer of performance unless the offer is accepted"). Although it may be doubtful whether the trial court could make findings on this issue for summary judgment, the trial court ruled that Mary's refusal to perform altogether made specific tender of the money unnecessary. Furthermore, paragraph V of the Lease With Option To Buy, upon exercise of the option, does not call for immediate payment of the money. Because I believe that, factually, a tender may have been unnecessary here, I would remand for determination of that question from all of the evidence by trial.

There are issues of fact about the need for tender, and about the sufficiency of tender of the purchase price. We should remand for trial on those issues.

VANDE WALLE, J., concurs.