**VILLAGE WEST ASSOCIATES, a North Dakota Partnership, Plaintiff and Appellee,**

v.

**Maynard BOEDER, individually and d/b/a Fashion Colony, Defendant and Appellant.**

Civ. No. 910312.

Supreme Court of North Dakota.

June 25, 1992.

Roderic Schuster, of Schuster, Brothers & Beauchene, Fargo, for plaintiff and appellee.

Roger J. Minch, of Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for defendant and appellant.

VANDE WALLE, Justice.

Maynard Boeder, individually and doing business as Fashion Colony, appealed from a district court judgment awarding Village West Associates [Village West] $15,688.87 plus $1,725.77 in prejudgment interest. We affirm.

On October 17, 1986, Village West and Boeder entered into a written lease agreement in which Village West leased commercial space in the Village West Shopping Center to Boeder. The written lease ran from January 1, 1987, through December 31, 1988, and included the following option to renew:

"ARTICLE XV.—ADDITIONAL PROVISIONS

"a. At the expiration of the initial term of this lease agreement, and the [Lessee] shall have fully performed all of the terms and conditions of this agreement, the Lessee shall have the option to

extend this lease upon the same terms and condition, including the provisions for rental, for one successive term of three years, commencing on the expiration of the initial term. In order to exercise the foregoing option, the [Lessee] must give the Lessor six months written notice prior to the expiration of the term of this Lease or any other extension thereof, of [Lessee's] intent to exercise said option."

The lease also provided:

"ARTICLE XIV.—MISCELLANEOUS

"*Section 14.01—Notices.* Whenever under this lease a provision is made for any demand, notice, or declaration of any kind or where it is deemed desirable or necessary by either party to give or serve any such notice, demand, or declaration to the other, it shall be in writing sent by registered or certified mail with postage prepaid....

\*     \*     \*     \*     \*     \*

"Such notices, demands, or declarations shall be deemed sufficiently served or given for all purposes hereunder at the time they shall be mailed by the United States registered or certified mail as aforesaid.

"*Section 14.02—Waiver....* No covenant, term, agreement, or condition of this lease shall be deemed to have been waived by Lessor, unless such waiver be in writing by Lessor.

"The waiver of any covenant, term, agreement, or condition of this lease or legal right or remedy shall be implied by the failure of Lessor to declare a forfeiture, or for any other reason...."

Boeder sent a "Message Reply," dated June 27, 1988, by ordinary mail to Village West which read:

"SUBJECT: Exercising Lease Option # XV

"Dear Sirs:

"Please be advised that I am complying with Article XV of our Lease agreement, which states that I must provide you with my intent, at this time, to exercise the additional 3 year option 6 months prior to termination of this lease, which is 12/31/88."

Boeder sent another message reply, dated November 30, 1988, by ordinary mail to Village West which stated that he was unable to exercise the three-year lease extension option granted in the original lease because of a significant reduction in his sales volume. Boeder requested a base extension in four-month segments rather than the three-year extension. On January 4, 1989, Village West sent a letter to Boeder which stated that it was unable to grant his request to rescind the three-year option exercised in the June 27, 1988 document.

Boeder vacated the premises in September 1989 and paid rent up to and including one-half of the October 1989 rent. Boeder hired John Thompson, a commercial real estate broker, to help Village West sublet the premises. Thompson eventually found a replacement tenant, Camelot Cleaners, to lease the premises, effective July 1, 1990, from Village West for a smaller monthly rental than Boeder had been paying. Boeder paid a $1,488.88 commission to Thompson.

Village West sued Boeder for rent lost while the premises were vacant and for the difference between the rent that would have been paid by Boeder during the balance of the lease and the rent paid by Camelot Cleaners. Boeder denied that he exercised the renewal option and counterclaimed, seeking reimbursement for the $1,488.88 paid to Thompson plus $62.50 paid for advertising the premises. The trial court determined that, by sending the June 27, 1988 "Message Reply," Boeder exercised the option to extend the lease for an additional three-year period from January 1, 1990, through December 31, 1992. The court concluded that Boeder breached the lease and that Village West was entitled to $15,688.87 in damages for lost rent. The court also dismissed Boeder's counterclaim. A judgment was entered awarding Village West $15,688.87 plus $1,725.77 in prejudgment interest. Boeder appealed.

Relying upon *Western Tire, Inc. v. Skrede,* 307 N.W.2d 558 (N.D.1981), *Wessels v.*

*Whetstone,* 338 N.W.2d 830 (N.D.1983), and *Fries v. Fries,* 470 N.W.2d 232 (N.D. 1991), Boeder argues that his June 27, 1988 message reply did not unequivocally state that he intended to exercise the option and that it was not sent by registered or certified mail as required by the terms of the lease. He thus contends the trial court erred in determining that his message reply exercised the option to extend the lease.

In *Skrede* a lease granted the tenant a renewal option if the tenant gave written notice by registered or certified mail to the landlord at least 30 days prior to the commencement of the renewal or any extension period. The tenant's attorney attempted to exercise the renewal option by sending the landlord notice by ordinary mail. After the lease had expired, the tenant's attorney discovered that he had sent the notice by ordinary mail rather than by registered or certified mail, and he sent a second notice by certified mail. The tenant sued the landlord, contending that the notice by ordinary mail properly exercised the renewal option. The landlord contended that the lease was cancelled because the tenant had failed to give timely and proper notice of the exercise of the option to renew.

We noted that the landlord had specified the exclusive method for communication of acceptance and, because the mode of acceptance was exclusive, we held the unauthorized mode used by the tenant was not effective. We concluded that the tenant had not met both the time and the manner requirements for exercising the option to renew the lease and that the irrevocable offer created by the option to renew had lapsed.

In *Wessels* the holders of an option to purchase real estate sued the personal representative of the optioner for specific performance of the contract. We said that an optionee must exercise an option in the time and upon the terms and conditions stated in the option and that acceptance of the offer in the option must be unequivocal and in accordance with the terms of the option. A majority of this court concluded that the optionee's conduct in attempting to exercise the option did not constitute a tender of a contract for deed as required by the terms of the option. The majority held that the option had not been properly exercised.

In *Fries* a lease contained an option to buy real property. The holders of the option attempted to exercise the option by offering to purchase a six-sevenths interest in the land. We recognized that because the optioner is bound to perform if the option is properly exercised, the optionee must exactly comply with the terms of the option. We said that acceptance of an option must be unconditional and in accordance with the terms of the option unless the optioner waives those terms. A majority of this court held that the offer to purchase a six-sevenths interest in the property was an ineffective exercise of the option.

Each of those cases involved an optionee claiming compliance with an option. The underlying rationale for the decisions in those cases is that because the optioner is bound to perform the irrevocable offer if the option is properly exercised, the optionee must strictly comply with the terms of the option. In those cases, the optioner did not claim that the optionee had complied with the terms of the option, and no issue was raised about whether or not the optioner had waived any terms of the option.

In *Fries,* we noted that the optioner may waive terms pertaining to the exercise of the option. That statement follows the well established principle that a landlord may waive the manner of notice and the time for the exercise of a renewal option. *Fun Products Distributors, Inc. v. Martens,* 559 P.2d 1054 (Alaska 1977) [waiver of timely written notice]; *Gruber v. Castleberry,* 23 Ariz.App. 322, 533 P.2d 82 (1975) [waiver of written notice]; *Miami Beach Vacations, Inc. v. Wofford,* 262 So.2d 683 (Fla.Ct.App.1972) [waiver of registered mail]; *Playmate Club, Inc. v. Country Clubs, Inc.,* 62 Tenn.App. 383, 462 S.W.2d 890 (1970) [waiver of time]; *Pruett Jewelers, Inc. v. J. Weingarten, Inc.,* 426 S.W.2d 902 (Tex.Civ.App.1968) [waiver of time]. *See* 50 Am.Jur.2d, *Landlord and Tenant* § 1186 (1970); Annot.,

*Waiver or Estoppel as to Notice Requirement for Exercising Option to Renew or Extend Lease,* 32 A.L.R.4th 452, § 15 (1984). A waiver may be implied where the lessee remains in possession of the property and pays the rent to the lessor with the lessor's acquiescence. *Gruber v. Castleberry, supra; Miami Beach Vacations, Inc. v. Wofford, supra; see* 50 Am.Jur.2d, *Landlord and Tenant* § 1186 (1970); *Annot.,* 32 A.L.R.4th, § 15.

▮ In this case, Village West, the optioner, does not assert that Boeder improperly exercised the option. Rather, Boeder, the optionee, asserts that he did not properly exercise the option. Although Boeder asserts that he did not subjectively intend to exercise the option and that the message reply did not unequivocally state that he intended to exercise the option, the trial court determined that by sending the June 27, 1988 message reply, he exercised the option to extend the lease. The trial court thus determined that the "message reply" evidenced Boeder's intent to exercise the renewal option. Considering the language Boeder used in the "message reply" and the trial court's opportunity to assess his credibility, we conclude that the trial court's finding that Boeder intended to exercise the option is not clearly erroneous under Rule 52(a), N.D.R.Civ.P.

▮ Boeder nevertheless argues that his exercise of the option was ineffective because it was not sent by registered or certified mail and thus did not comply with the terms of the option. Although the lease provided that no term of the lease shall be deemed to have been waived unless the waiver was in writing by the lessor, the lease also specified that the "waiver of any covenant, term, agreement, or condition of this lease ... shall be implied by the failure of Lessor to declare a forfeiture." The trial court's determination that Boeder exercised the option to extend the lease when considered with the failure of Village West to declare a forfeiture was, in effect, a determination that Village West impliedly waived the requirement of certified or registered mail. Boeder is in no position to deny the effect of his affirmative act of

notifying the lessor of his election, in the June 27, 1988 message reply, to renew the lease. *See Miami Beach Vacations, supra.* Under these circumstances, we conclude that the trial court did not err in determining that Boeder exercised the option to extend the lease.

Boeder also contends that the judgment should have been reduced by $1,488 for his counterclaim. In support of his argument Boeder relies upon the trial court's statement in its finding that "the plaintiff [Village West] pay the sum of $1,488 to Mr. John Thompson as and for a commission for securing a tenant to take over the premises." However, immediately after that statement the trial court found that Boeder employed Thompson to reduce Boeder's liability to Village West for the breach of the lease, and the court ordered judgment in favor of Village West on Boeder's counterclaim. The judgment dismissed Boeder's counterclaim and controls when there is a conflict. *Service Oil, Inc. v. State,* 479 N.W.2d 815 (N.D.1992). The court's dismissal of the counterclaim indicates that the above-quoted language was an obvious typographical error and that Boeder was not entitled to a reduction in the judgment for those expenses.

Boeder also contends that the judgment did not conform to the order for judgment because the judgment included prejudgment interest not mentioned in the order. The judgment awarded prejudgment interest at the legal rate from July 1, 1990, in the sum of $1,725.77.

▮ Rule 58, N.D.R.Civ.P., requires the existence of an order for judgment before a valid judgment may be issued. *Lang v. Bank of Steele,* 415 N.W.2d 787 (N.D. 1987). Ordinarily a judgment must conform to the order for judgment. *See Mielcarek v. Riske,* 74 N.D. 202, 21 N.W.2d 218 (1945) [Judgment entered on a general verdict must be in conformity with the verdict].

▮ However, if there is a conflict between a judgment and an order for judgment, the judgment controls, *Larson v. Baer,* 418 N.W.2d 282 (N.D.1988), subject to the right of the parties to have the

judgment amended to conform to the order for judgment pursuant to Rule 60, N.D.R.Civ.P. *Moore v. North Dakota Workmen's Compensation Bureau,* 374 N.W.2d 71 (N.D.1985). Village West made no effort before the district court to have the judgment amended to conform to the order for judgment. *Moore, supra; Gruebele v. Gruebele,* 338 N.W.2d 805 (N.D. 1985). *See also Klinefelter v. Anderson,* 59 N.D. 417, 230 N.W. 288 (1930) [Trial court has inherent power to correct judgment which does not conform to order for judgment.].

■ Furthermore, the discrepancy between the order for judgment and judgment is of no moment in this instance, for in *Metcalf v. Security International Insurance Co.,* 261 N.W.2d 795 (N.D.1977), we considered a request on appeal to award prejudgment interest under Section 32–03–04, N.D.C.C.,[1] for a breach of contract. We determined that, under that statute, damages were readily ascertainable by calculation in accordance with the contract, and we awarded prejudgment interest.

Here, prejudgment interest was required by Section 32–03–04, N.D.C.C., because Village West was entitled to recover damages certain or capable of being made certain by calculation. If the judgment did not contain a provision for prejudgment interest, we would award that interest on appeal. *Metcalf, supra.* Therefore, because Village West is entitled to the prejudgment interest as a matter of law, it would serve no useful purpose to remand for further consideration of this issue. *See Wolf v. Schumacher,* 477 N.W.2d 827 (N.D.1991).

Accordingly, we affirm the district court judgment.

ERICKSTAD, C.J., and LEVINE, MESCHKE and JOHNSON, JJ., concur.

---

1. Section 32–03–04, N.D.C.C., provides:
   *"Interest on damages.*—Every person who is entitled to recover damages certain or capable of being made certain by calculation, the right to recover which is vested in him upon a particular day, also is entitled to recover interest thereon from that day, except for such time as the debtor is prevented by law or by the act of the creditor from paying the debt."